# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Rinne Corp | ) | |
| | ) | Case No. 23-cv-16232 |
| v. | ) | |
| | ) | Judge:  Hon. Jeffrey I Cummings |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | Magistrate: Hon. Gabriel A. Fuentes |
| IDENTIFIED ON SCHEDULE A | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF JOINDER

**Table of Contents**

I. Introduction ........................................................................................................................... 4

II. Background on Defendant Activities ................................................................................... 4
    A. Plaintiff Trademark and Products ................................................................................. 4
    B. Plaintiff's Investigations .............................................................................................. 4
    C. Defendants' Illegal Activities........................................................................................ 5

III. Joinder of Defendants Under Fed. R. Civ. P. 20(a)(2) is Proper ...................................... 6

III. Argument ........................................................................................................................... 8
    A.Plaintiff's Pleadings Satisfy the Requirements of Rule 20 ............................................ 8
    B. Joinder Is In the Interest of Convenience and Judicial Economy .................................. 11
    C. Defendants are Not Prejudiced by Permitting Joinder ................................................. 13
    D. The Court May Revisit Joinder at Later Stages of Litigation ....................................... 14

VI. Conclusion ........................................................................................................................ 15

**Table of Authorities**

**CASES**

*AF Holdings, LLC v. Does 1-1508*, 752 F.3d 990, 998, 410 U.S. App. D.C. 41 (D.C. Cir. 2014)
    ................................................................................................................................... 10

*Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 514 (N.D. Ill. 2000) ............................................. 7

*Bicycle Peddler, LLC v. Doe*, 295 F.R.D. 274, 278 (N.D. Ill. 2013)........................................... 11

*Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2020 U.S. Dist.
    LEXIS 27826, *13 (N.D. Ill. February 19, 2020)..................................................................... 10

*Burlington N.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990)................................................ 7

*Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) ......................................................... 6

*Enelow v. New York Life Ins. Co.*, 293 U.S. 379 ........................................................................ 12

*Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Associations Identified on Schedule A*,
    334 F.R.D. 182, 189 (N.D. Ill. 2020)........................................................................... 10, 12, 14

*First Time Videos LLC v. Doe*, 276 F.R.D. 241, 253 (N.D. Ill. 2011)........................................... 12

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)................................................................... 14

*Gonzales*, 2014 U.S. Dist. LEXIS 78879, 2014 WL 2591690 ..................................................... 11

*In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) .................................................. 8, 9, 15

*In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) ............................................................. 8

*Jacques v. Hyatt Corp.*, No. 11 CV 5364, 2012 U.S. Dist. LEXIS 102289, 2012 WL 3010969, at *4 (N.D. Cal. July 23, 2012)............................................................. 11

*Kansas City Southern Ry. v. United States*, 282 U.S. 760 .......................................... 12

*Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) ...................................... 12

*London-Sire Records, Inc. v. Doe 1, 542* F. Supp. 2d 153, 161 (D. Mass. 2008) ........................ 14

*Lozada v. City of Chicago*, 2010 U.S. Dist. LEXIS 89231, at *7 (N.D. Ill. Aug. 30, 2010).......... 7

*Papachristos v. Hilton Management, LLC*, No. 14 CV 5501, 2015 U.S. Dist. LEXIS 28708, at *9 (N.D. Ill. Mar. 10, 2015).................................................................... 11

*Russo v. Bache Halsey Stuart Shields, Inc.*, 554 F.Supp. 613, 616 (N.D.Ill. 1982) ....................... 6

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966)............................................................................. 6

## STATUTES

Fed. R. Civ. P. 20(a)(2)(A)-(B)................................................................................. 6

Fed. R. Civ. P. 21 ................................................................................................. 15

Fed. R. Civ. P. 42(a)(1-3) -(b) .............................................................................. 15

## OTHER AUTHORITIES

Eamonn Fingleton, *In the Jaws of the Dragon: America's Fate in the Coming Era of Chinese Dominance* (New York: Thomas Dunne Books/St. Martin's Press, 2008)................................. 9

## MEMORANDUM OF LAW

### I. Introduction

Plaintiff Rinne Corp LLC ("Rinne Corp") filed this action against Defendants, as identified on Schedule A of the Complaint (collectively, the "Defendants") for federal trademark counterfeiting and infringement (Count I), unfair competition and false designation of origin (Count II), Copyright Infringement (Count III), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV). Plaintiff submits this Memorandum of Law in support of finding that joinder of the Defendants is proper.

### II. Background on Defendant Activities
### A. Plaintiff Trademark and Products

Rinne Corp is a U.S. based manufacturer of humane pest control devices. One of the Plaintiff's best-selling products is the FLIP N SLIDE, which is a device which fits on a bucket, serving as a more humane trap for mice, rats and other pests. The FLIP N SLIDE is high-quality, exhibiting an attention to detail, workmanship and quality manufacturing which is prized by consumers because it works well and lasts, which is why the tool is targeted by counterfeiters.

### B. Plaintiff's Investigations

The Defendants are believed to be foreign nationals, primarily based out of China and Asia, who are engaged in selling counterfeit versions of the FLIP N SLIDE. The Plaintiff engages in extensive investigations of the Defendant's illegal activities prior to filing suit, but is limited by the anonymous nature of the Defendants webstores. Counterfeit products are identified through a variety of methods: the listings feature the Plaintiff's trademarks and/or

marketing images, those sellers are cross-checked against licensed distributors and those who are

not authorized are flagged for further investigation. In addition to gathering evidence of the

listings on webstores which infringe on the Plaintiff's FLIP N SLIDE mark, the Plaintiff also

attempts to secure sample products from all Defendants by placing regular orders from the

Defendants' listings. Sample buys are not, however, always secured from each Defendant. As the

counterfeiters discover the Plaintiff's investigations, they collude, via message boards and chat

rooms, many Defendants will stop shipping to addresses they suspect are being used by the

Plaintiff.

The activities by the Plaintiff are also often revealed because a single owner or entity

may operate dozens of webstores, across multiple platforms. This makes it difficult to obscure

the purchase of similar goods, shipped to common addresses and being purchased across

different stores and sites, which reveals the Plaintiff's investigations. Defendants who become

aware of the investigations, in turn, post warnings to "members only" message boards or utilize

instant messaging platforms such as QQ or WeChat to inform other counterfeiters of the

Plaintiff's activities. The result is a game of cat-and-mouse which impairs the Plaintiff's fight

against counterfeiters.

### C. Defendants' Illegal Activities

Counterfeiters source their infringing goods in a variety of ways. First, there are a number

of China-based websites which offer bulk wholesale goods to the Chinese market. Supplemental

Declaration of Nick Rinne, ¶ 2. This targeting of the Chinese market often places the wholesalers

out of reach for Plaintiff's legal recourse, forcing the Plaintiff into actions such as complaints

with the World Trade Organization, or pursuing remedy within the Chinese legal system, both of

which are often so time consuming and arduous, that severe damage is inflicted to the Plaintiff's

marks, product lines and revenues before resolution, if any, may be reached. Additionally, the lack of any U.S. entities, banks, or other institutional connections, make it virtually impossible to trace the identity or the flow of funding of these wholesalers.

Counterfeit goods are also purchased on the black market, or in large China based "wholesale malls" in which sellers offer counterfeit goods to buyers in a physical setting, selling out lots of counterfeit goods, which the buyers then in turn offer online to consumers throughout the globe, including the United States. *Id.*, ¶ 5.

### III. Joinder of Defendants Under Fed. R. Civ. P. 20(a)(2) is Proper

Under Rule 20(a)(2), defendants may be joined in a single action if two requirements are satisfied: (1) the claims against them must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)-(B).

"Joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966). *See also*, *e.g. Russo v. Bache Halsey Stuart Shields, Inc.*, 554 F.Supp. 613, 616 (N.D.Ill. 1982). Permissive joinder enables plaintiffs to have their case adjudicated in the most efficient manner designed to take up the least amount of the Court's time and attention and "to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). Although often referred to as "judicial economy" the court should also account for the economies of the Plaintiff, Defendants, and third-parties. The Supreme Court has also stated that under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers*, 383 U.S. at 724.

Although it is established that infringement of the same trademark alone is insufficient to support joinder, the Seventh Circuit has not adopted a specific rule with respect to the transactional analysis for joinder, "Rule 20 should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 514 (N.D. Ill. 2000). The Seventh Circuit has held that "there is no formalistic test to determine whether suits are logically related. A court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Burlington N.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). Factors considered by Courts in this District include whether the alleged conduct occurred during the same general time period and involved the same people and similar conduct. *Lozada v. City of Chicago*, 2010 U.S. Dist. LEXIS 89231, at *7 (N.D. Ill. Aug. 30, 2010).

The Defendants here share more than simply infringing the same FLIP N SLIDE trademark and copyrights; the evidence available to the Plaintiff at this juncture suggests that many of the online sellers share a number of operative facts: potential common ownership of accounts, common geographic operations, similar methodology in operation, and similar channels of securing counterfeit goods, satisfying the inquiry espoused by the 7th Circuit in *Burlington N.R. Co.*

Furthermore, joinder under the instant facts support economies in litigation—not only for the Court, but also for the Plaintiff and third-parties which are a necessary part of the evidence gathering in this type of counterfeiting and infringement litigation.

The Court may consider the issue of joinder *sua sponte* at any point in litigation. However, to rule that joinder is improper at this juncture is premature, as the *prima facie*

evidence at this stage supports joinder, as well as consolidation under Rule 42. As additional facts come to light during the process of discovery, the Defendants may challenge joinder or the Court may revisit joinder after proper discovery on the Defendants, and allowing joinder at this stage of litigation serves economies in litigation without prejudicing any of the parties.

## III. Argument

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the FLIP N SLIDE mark through their counterfeiting and infringement. The facts alleged by the Plaintiff support finding the infringement arises out of the same series of transactions or occurrences, that the facts are common to all defendants, and joinder is in the best interests of judicial economy and economy in litigation. Based on the evidence collected by the Plaintiff, the Defendants all appear to operate in the same geographic region, share a common manufacture counterfeit source, share common platforms for their infringing listings/sales, share financial institutions, and employ similar methods for obscuring the source of their goods and their identities. The third-parties who can provide identification of the Defendants, sales records of counterfeit goods, and additional information about their counterfeit activities are common to all the Defendants, and to deny joinder would unduly burden third-parties as well as prejudice the Plaintiff in its efforts to enforce its rights.

### A. Plaintiff's Pleadings Satisfy the Requirements of Rule 20

Courts generally find that claims against different defendants arose out of the same transaction or occurrence if there is a "logical relationship between the separate causes of action." *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012); *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994). The facts which are directly relevant to trademark infringement, counterfeit

products, false designation of origin, and deceptive business practices include the source and verification of the counterfeit goods, the geographic location of the goods and operations, and the methods the Defendants use to obscure the identities and operations.

In the instant case, the Plaintiff has linked the counterfeit products to a single Chinese manufacture: Clean PCO. Rinne Supp. Decl. ¶3. Clean PCO offers specific counterfeit versions of the FLIP N SLIDE and bulk sales of counterfeit FLIP N SLIDE products, all of which appear to be produced in a single factory. One-hundred percent of the Defendants appear to have purchased the Clean PCO counterfeit version and are reselling it. *Id* at ¶4.

Sellers may purchase the counterfeit items from Clean PCO via their website or via physical wholesale markets in China. Rinne Supp. Decl. ¶5. These types of Chinese wholesale markets are rampant with counterfeit goods. "As documented by the author Tim Phillips in 2005... [t]he city of Yiwu ... functions as a sort of 'Wall Street' for the counterfeiting industry, providing a vast marketplace where, Phillips states, 100,000 counterfeit products are openly traded and 2,000 metric tons of fakes change hands daily." Eamonn Fingleton, *In the Jaws of the Dragon: America's Fate in the Coming Era of Chinese Dominance* (New York: Thomas Dunne Books/St. Martin's Press, 2008), 41.

In *In re EMC,* the Court Found that "the sameness of the accused products is not enough to establish that claims of infringement arise from the 'same transaction'. Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical. 677 F.3d 1351, 1359 (Fed. Cir. 2012). Here, the Defendants are not using "independently developed products" and are not "coincidentally identical". The counterfeit products are originating from the *same manufacturers* in the *same markets* in the

*same location* in China. Rinne Supp. Decl. ¶6-8. The lack of diverse sources for the counterfeit goods supports that they are all operating from a concentrated group of counterfeiters—and potentially coordinating actions with respect to manufacturing and distribution.

Here, the underlying facts go beyond the product: more than 55% are using the same instruction manual, offered by default by Clean PCO, and the remaining are using "custom" manuals, which is a service offered by Clean PCO. Rinne Supp. Decl. ¶7.

Additionally, nearly half of the Defendants are using the same pictures in their listings. Rinne Supp. Decl. ¶8. Sample purchases confirm a web of similarities between the Defendants, linking them inexorably to the chain of counterfeit goods and each other. *Id.* at 9-10.

The Court in *Estée Lauder* cited *AF Holdings* which analogized that two individuals who download the same file at separate times are "like two individuals who play at the same blackjack table at different times. They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions." *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Associations Identified on Schedule A*, 334 F.R.D. 182, 189 (N.D. Ill. 2020) (citing *AF Holdings, LLC v. Does 1-1508*, 752 F.3d 990, 998, 410 U.S. App. D.C. 41 (D.C. Cir. 2014).

While this may be true for the facts of a BitTorrent case such as *AF Holdings*, where differing members of a swarm may not be receiving infringing material from another defendant at the same time, the analogy does not hold for physical counterfeit goods.

Other courts have held that occurrences also do not need to be the product of joint or coordinated action. *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2020 U.S. Dist. LEXIS 27826, *13 (N.D. Ill. February 19, 2020). There is a "transactional link" between defendants when there is a cooperative endeavor to facilitate an unlawful object whether

or not all the members of the group took part in all of the actions of the group as a whole, and without regard to when they joined. *Bicycle Peddler, LLC v. Doe*, 295 F.R.D. 274, 278 (N.D. Ill. 2013). Courts have found joinder permissible even in situations where the plaintiff's claims arise from incidents that appear to be chronologically and factually distinct. *See, e.g., Gonzales*, 2014 U.S. Dist. LEXIS 78879, 2014 WL 2591690, at *1; *Jacques v. Hyatt Corp.*, No. 11 CV 5364, 2012 U.S. Dist. LEXIS 102289, 2012 WL 3010969, at *4 (N.D. Cal. July 23, 2012); *Papachristos v. Hilton Management, LLC*, No. 14 CV 5501, 2015 U.S. Dist. LEXIS 28708, at *9 (N.D. Ill. Mar. 10, 2015).

In the instant case, the Defendants are not "playing blackjack" at the same time with the same strategy; they are in the same casino, at the same table, using the same stacked deck bought from the same grifter on the same street-corner. The Defendants may not have been on the wholesale website or in the wholesale market purchasing counterfeit goods for resale at the same time, but the underlying facts relating to the sources of their counterfeit goods are part of a cooperative endeavor to sell counterfeit goods and are all common to all Defendants. They are selling the same counterfeit goods, from the same sources, utilizing the same images, descriptions, logistics, all within the same geographic region. See Rinne Supp. Decl. ¶4-10. As a result, the Defendant's infringements all stem a logical relationship and series of transactions/occurrences which all share a common set of underlying facts supporting the Plaintiff's action, and thus satisfying the requirements of Rule 20.

## B. Joinder Is In the Interest of Litigation and Judicial Economy

In *Estée Lauder*, the Court expresses concern permissive joinder of the large number of defendants, which is larger in the instant case, would not serve judicial economy and trial convenience "because the ensuing discovery and variety of defenses could prove unwieldy for a

single case" 334 F.R.D. 182, 189-90 (N.D. Ill. 2020). It is undeniably true that there would be a high-burden placed on the court in terms of evidentiary review. But this is true for any type of large-scale litigation. However, here the types of evidence relating to each Defendant would be of very similar character, as would the Defenses available, due to the facts relating to the action all stemming from the same series of transactions and sharing underlying facts. In light of total litigation economy, the interests of the Court, parties and third-parties are best served by allowing joinder.

Joinder for judicial economy is linked to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City Southern Ry. v. United States*, 282 U.S. 760, 763; *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382.

As the Court in *First Time Videos LLC v. Doe* noted when considering joinder in a copyright case, severance in these cases is more likely to cause delays and prejudice. 276 F.R.D. 241, 253 (N.D. Ill. 2011). If joinder is disallowed in the instant case, the result is essentially that of severance, which would create over 472 individual cases. The same evidence submitted in support of each temporary restraining order would need to be considered by the court, resulting in no time savings for the court. Indeed, it would increase the burden on the court system overall: each Defendant would require its own proceedings, resulting in a dramatic increase in burden on the Clerk of the Court in additional filings, a swelling of the Court docket for each case, increased burden in tracking each case.

Joinder also supports additional economies of litigation for the Plaintiff and third-parties. The cause of action is identical for each Defendant, as are the facts related to their sourcing of counterfeit goods, and their listings and platform. The Plaintiff would be needlessly duplicating filings per each defendant, and incurring dramatically increased litigation costs, imposing an onerous burden on the Plaintiff to protect their rights under law.

The majority of evidence in these cases also comes from third-parties: the ecommerce platforms hosting the Defendant's stores. The Defendants sell the counterfeit goods on ten internet platforms: Amazon, Wish, DHGate, eBay, Alibaba/AliExpress, Newegg, Walmart, Joybuy, Temu, and Shopify. These platforms serve as both the listing and retail outlets—and also the Defendant's financial institutions via their platform accounts. The Plaintiff must serve each of these platforms the Temporary Restraining Order, and the platforms must provide evidence related to the case, such as sales figures for counterfeit goods and related financial information. Severing or filing each case individually would result in a flood of requests, placing an undue burden on the third-party: they would need to track more than 472 individual cases through their legal departments.

The overarching goal of efficiency in litigation for the courts and—when considered in a larger context—efficiency for parties and third-parties, is best served by allowing joinder.

### C. Defendants are Not Prejudiced by Permitting Joinder

Even though joinder is appropriate in light of the requirements of Rule 20, and appropriate in light of judicial/litigation economy, it is still necessary to consider potential prejudice to the Defendants. Here, there is no prejudice to the Defendants in allowing joinder.

First, the allegations against each Defendant are identical and even if separated into distinct actions, the responses necessary from each Defendant would be the same, whether in a discrete action or joined in the instance case.

Second, it is possible that Defendants would actually *benefit* from joinder. In *London-Sire Records* the court noted that since the cases involved similar, even virtually identical, issues of law and fact, consolidating the cases "ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised." *London-Sire Records, Inc. v. Doe 1, 542* F. Supp. 2d 153, 161 (D. Mass. 2008). Indeed, the Defendants work in concert to secure counterfeit goods *and* in defense; sites such as SellerDefense.cn serve to coordinate the activities of the counterfeit sellers and coordinate their defenses. See Rinne Supp. Decl. ¶11.

The Defendants here are all in a similar position. Allowing joinder does not prejudice them, in fact, it allows them to see any filings and potential defenses from other Defendants and achieve economy in litigation when multiple stores are owned by a single Defendant as well.

### D. The Court May Revisit Joinder at Later Stages of Litigation

As in *Estée Lauder* no defendant has been served in this case and no Defendants have filed any motions challenging joinder. It is appropriate for federal courts to raise improper joinder on their own, especially when the sheer number of defendants waves a joinder red flag and ups the chances that the plaintiff should be paying separate filing fees for separate cases. 334 F.R.D. 182, 186 (N.D. Ill. 2020)(citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

However, the facts pled by the Plaintiff at this stage of the litigation support joinder under Rule 20, and concerns regarding judicial economy, as well as potential prejudice to defendants are not required to be addressed *sua sponte* at this stage of litigation. If joinder becomes

unwieldy at a later stage of the litigation the Court may sever Doe Defendants at that time

pursuant to Federal Rule of Civil Procedure 21. Fed. R. Civ. P. 21 ("On motion or on its own, the

court may at any time, on just terms, add or drop a party."). Similarly, if additional facts are

brought to light during the course of discovery, individual defenses may raise legal and factual

differences between Doe Defendants that may make joinder inappropriate. *Malibu Media, LLC v.

Doe*, 291 F.R.D. 191, 205 (N.D. Ill. 2013). The court would be within its powers to review

joinder *sua sponte* at as the litigation advances, if it becomes clear that the administration of the

case has become burdensome and is no longer in the best interest of judicial economy.

Finally, in addition to joinder, the Court may also consolidate actions under Rule 42, "If

actions before the court involve a common question of law or fact, the court may: (1) join for

hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue

any other orders to avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a)(1-3)-(b).

In exercising its discretion, the Court should keep in mind that even if joinder is not

permitted under Rule 20, the district court has considerable discretion to consolidate cases for

discovery and for trial under Rule 42 where venue is proper and there is only "a common

question of law or fact." *In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012).

### VI. Conclusion

Defendants' counterfeiting operations, trademark and copyright infringements are

irreparably harming Plaintiff's business, its FLIP N SLIDE mark and consumers. The evidence

obtained by the Plaintiff to date shows that the Defendants obtain their counterfeit goods through

the same channels, if not the same source, in the same geographic region, often using the same

packaging and inserts, the same photographs in their sales listings, and act in concert to thwart the

further investigation and evidence gathering by the Plaintiff. Judicial economy and litigation

economy, to the Court, the Parties and Third-Parties, is best served by allowing joinder. Finally, the Defendants are not prejudiced by joinder in any way; Defendants may challenge joinder after their identities are determined and they are served. The evidence available to the Plaintiff at this stage is sufficient to support joinder.

For these reasons, the Plaintiff requests that the Court find joinder appropriate at this juncture and grant the Plaintiff's Motion for a Temporary Restraining Order.

Dated this 18th of December, 2023.           Respectfully submitted,


                                              By: ___s/David Gulbransen/_____
                                                   David Gulbransen
                                                   Attorney of Record for Plaintiff

                                                   David Gulbransen (#6296646)
                                                   Law Office of David Gulbransen
                                                   805 Lake Street, Suite 172
                                                   Oak Park, IL 60302
                                                   (312) 361-0825 p.
                                                   (312) 873-4377 f.
                                                   david@gulbransenlaw.com